UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>DEREK JAMES TUSCHOFF,<br><br>    Defendant. | Case No. 1:19-cr-00233-1-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Derek James Tuschoff's Motion to Dismiss Indictment. Dkt. 122-1. The Government has filed an opposition to Tuschoff's Motion. Dkt. 125. Tuschoff replied. Dkt. 126. This matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court decides the pending motions on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

In his Motion to Dismiss, Tuschoff asks the Court to either dismiss the indictment or, alternatively, limit certain testimony at the upcoming hearing on his Motion to Suppress. Because disclosure of the purportedly new information was prompt under Federal Rule of Criminal Procedure 16, and the testimony is not prejudicial for reasons outlined below, the Court DENIES the Motion.

## II. BACKGROUND

Idaho State Police (ISP) detectives had been investigating Tuschoff for drug trafficking for six-months prior to his arrest on July 1, 2019. *See generally*, Dkt. 49. Based on information gathered from the investigation, detectives were able to receive a search warrant authorizing the collection of cellphone and location data. *Id.* On June 20, 2019, the GPS data indicated that Tuschoff travelled from Boise to Pocatello, Idaho. *Id.* Detectives suspected Tuschoff had met with certain individuals for a new supply of methamphetamine. *Id.* The next day, ISP learned via GPS data that Tuschoff was heading back to Boise on Interstate 84. *Id.* ISP Detective Jared Sweesy, an officer with knowledge of the drug investigation, observed Tuschoff's vehicle near milepost 194 in Jerome County. Detective Sweesy noticed that Tuschoff's vehicle had extremely dark window tint that appeared to violate Idaho Code Section 49-944. *Id.* Sweesy contacted ISP Trooper Michael Marrott and Michael Hausauer about his suspicions. *Id.*

After talking with Detective Sweesy, Trooper Hausauer initiated a traffic-stop on Tuschoff. *Id.* Tuschoff provided his driver's license, registration, and proof of insurance. Dkt. 46. As Trooper Hausauer checked Tuschoff's information, Trooper Marrott, an ISP K-9 officer, began asking Tuschoff if there was anything illegal in the vehicle. Dkt. 49. Trooper Marrott reported that Tuschoff's nervousness increased with this question. *Id.* At this point, Trooper Marrott asked Tuschoff to exit the vehicle in order to deploy the k-9 dog around the car. *Id.* Tuschoff questioned why he needed to exit the car, and Trooper Marrott explained that because of Tuschoff's nervousness, it would be safer to deploy the dog around the car without Tuschoff inside. *Id.*

The next events are in dispute, but a discussion ensued as to why Tuschoff had to exit the vehicle, which ended in Tuschoff's arrest. Dkts. 46, 49. Tuschoff was placed in the back of Trooper Hausauer's car. Dkt. 49. Trooper Hausauer then performed a tint meter check, which revealed the tint displayed 5% visibility in violation of Idaho Code Section 49-944. *Id.* Trooper Marrott's dog performed a sniff search and alerted the officers to drug odor. *Id.* Thereafter, Tuschoff was taken to ISP District IV office and his car was taken to an ISP garage. *Id.* Officers later found 785.62 grams (1.73 lbs.) of methamphetamine and 234 fentanyl pills. *Id.*

On January 28, 2020, Tuschoff filed a Motion to Suppress, arguing that the drugs found in Tuschoff's car should be suppressed because Trooper Hausauer and Trooper Marrott prolonged the stop and deviated from the main purpose of the stop—investigating the window tint. Dkt. 46. The Government's response argued that the window tint investigation was not the only purpose of the stop, but also that the officers were justified in stopping Tuschoff because they had reasonable suspicion to suspect he was trafficking drugs. Dkt. 49. While not articulated clearly in its initial briefing, the concept the Government relies on here is known as the collective knowledge doctrine.

On February 26, 2020, Tuschoff filed a Reply Brief arguing that the Government never alleged that Trooper Hausauer and Trooper Marrott had knowledge of Tuschoff's drug investigation, nor did the Troopers indicate knowledge of the drug investigation in the police reports each filed after Tuschoff's arrest. Dkt. 54. Essentially, Tuschoff argues the collective knowledge doctrine has not been satisfied in this case, and Troopers Hausauer and Marrott were *not* allowed to investigate his vehicle for drugs.

MEMORANDUM DECISION AND ORDER - 3

On December 8, 2020, the Government informed Tuschoff that Trooper Marrott was aware of the drug investigation before the day of the arrest. Dkt. 122-1. The Government asserts that this information was discovered while preparing for the Motion to Suppress hearing. Dkt. 125. On December 30, 2020, in response to Tuschoff's discovery request, the Government informed Tuschoff that Trooper Hausauer was also aware of the drug investigation prior to the traffic stop. Dkt. 122-1. Tuschoff argues that the 10-month delay between the initial Motion to Suppress briefing and this new revelation that the Troopers had knowledge of the drug investigation violates Federal Rules of Criminal Procedure Rule 12 and Rule 16. Thus, Tuschoff argues the Court should dismiss the indictment or prohibit the Government from introducing the recently discovered evidence at the Motion to Suppress hearing and at trial.

### III. ANALYSIS

The recent disclosure that Trooper Marrott and Trooper Hausauer had knowledge of Tuschoff's drug investigation not only complies with Federal Rules of Criminal Procedure Rule 16, but is irrelevant to the sufficiency of the collective knowledge doctrine. Because this information is not prejudicial to Tuschoff, sanctions under Federal Rules of Criminal Procedure Rule 12 are inappropriate.

Under the collective knowledge doctrine, the Court determines whether an investigatory search complied with the Fourth Amendment by looking to the "collective knowledge of all the officers involved in the criminal investigation although all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually [undertakes the challenged action]." *United*

*States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007) (*citing United States v. Sutton,* 794 F.2d 1415, 1426 (9th Cir.1986)). When an officer with direct knowledge of facts that give rise to a reasonable suspicion orders another officer, not involved in the investigation, to conduct a traffic stop, search, or arrest, the collective knowledge doctrine is satisfied. *Ramirez*, 473 F.3d at 1031 (explaining the collective knowledge doctrine has no requirement regarding content, but only that the officer with personal knowledge of facts giving rise to a reasonable suspicion communicate an appropriate order to another officer to conduct a stop, search, or arrest).

      Here, the Government argued in its initial response brief that Detective Sweesy, an officer with personal knowledge of the drug investigation, observed Tuschoff on Interstate 84 heading west toward Boise and directed Trooper Hausauer and Trooper Marrott to conduct a traffic stop. Additional information regarding Trooper Hausauer's and Trooper Marrott's actual knowledge of the drug investigation is irrelevant to this argument and is not prejudicial to Tuschoff's case. The Government has relied on this theory from the outset. That exact details did not come out until later does not change what the Government argued, nor do the more recent disclosures mandate that the Court deny the Government the opportunity to pursue this argument at the upcoming hearing.

      Additionally, the Government has complied with Federal Rule of Criminal Procedure Rule 16 by producing all relevant information and documents in the Government's possession. In regard to the timeliness of the disclosures, Rule 16(c) outlines an on-going or "rolling" discovery schedule that requires "[a] party who discovers additional evidence or material before or during trial," to "promptly disclose its existence

to the other party," if the information is material or the opposing party has requested the disclosure. Fed. R. Crim. P. 16(c). . Here, the Government received this information while preparing for the Motion to Suppress Hearing and then promptly disclosed the information to Tuschoff. Thus, the Government complied with Rule 16.

Finally, Tuschoff argues that the Government has waived it's argument that Trooper Hausauer and Trooper Marrott knew of the drug investigation prior to the traffic stop because filing requirements pursuant to Federal Rules of Criminal Procedure Rule 12 have passed. Rule 12 requires suppression motions to be made before trial. Fed. R. Crim. P. 12(b)(3)(C). Tuschoff argues that the Government's particular grounds of how Trooper Hausauer and Trooper Marrott knew of the drug investigation must have been made in the initial Motion to Suppress briefing. However, the initial briefing did assert the particular grounds of the collective knowledge doctrine, in which Detective Sweesy—an officer with personal knowledge of the drug investigation—communicated an order to Trooper Hausauer and Trooper Marrott to conduct a traffic stop.

Even if the Court were to determine the Government disclosed this argument after the deadline—which it does not—dismissing the indictment would be inappropriate. It is within the Court's discretion to determine the appropriate sanction regarding compliance with discovery rules. *United States v. Valencia*, 656 F.2d 412, 415 (9th Cir. 1981). While the production here could possibly have been completed sooner, the Government produced the information to Tuschoff *as soon as it became aware of it*. What's more, even if the Government didn't make the exact argument in its initial suppression briefing that it is making now, such is irrelevant to the Court's analysis. First, the Government introduced

information sufficient to put Tuschoff on notice that it would rely (in part) on the collective knowledge doctrine in opposing his Motion to Suppress.[1] Second, arguments and theories often morph during the life of a case. That the Government expounded upon its initial theory with more discovery regarding Trooper Hausauer and Trooper Marrott's personal knowledge of the drug investigation is not prejudicial to Tuschoff's case.

Without a showing of a prejudice, a court has the discretion to admit evidence. *Id.* at 416. Upon review, the Court determines dismissal of the indictment, nor the prohibition of testimony regarding Trooper Hausauer and Trooper Marrott's personal knowledge of the drug investigation, is appropriate at this juncture.

In sum, the Government introduced information sufficient to put Tuschoff on notice that it would argue the collective knowledge doctrine applied during the initial Motion to Suppress briefings, which essentially makes information regarding Trooper Hausauer and Trooper Marrott's personal knowledge of the drug investigation irrelevant.[2] Additionally,

---

[1] Additionally, the Government disclosed evidence as far back as September 2019 (i.e. *before* briefing on the Motion to Suppress) indicating the Officers in question were aware of the ongoing drug investigation into Tuschoff. Dkt. 125-3, at 1. Again, the Government did not explain at that time that it planned to rely on the collective knowledge doctrine, but there was no reason to do so. Tuschoff did not file his Motion to Suppress until January of 2020. In short, the information underlying the Government's argument has been available (and known to Tuschoff) for some time. That the Government found further supporting information and solidified their theory more recently is not a violation of the rules, but the natural course of litigation.

[2] Tuschoff argues that the Government did not "raise the particular ground [that the officers were aware of the ongoing drug investigation] by the filing deadline" for the Motion to Suppress but instead "relied upon the collective knowledge doctrine and has only [recently] argued this new particular ground." Dkt. 127, at 6. This argument misses the mark. The Government's collective knowledge doctrine argument, by definition, includes the concept that officers were aware of the investigation from other officers and that this knowledge played into their subsequent actions. In other words, Tuschoff is trying to make a distinction where there is none. The Government has argued this from the beginning. That details regarding what the officers knew came to light later does not change this fact.

MEMORANDUM DECISION AND ORDER - 7

the Government promptly disclosed the recent information of Trooper Hausauer and Trooper Marrott's personal knowledge of the drug investigation as soon as it became aware of it, complying with Federal Rule of Criminal Procedure Rule 16. Finally, because this new discovery is not prejudicial to Tuschoff's case, it is not appropriate for the Court to dismiss the indictment or prohibit testimony from the Trooper's regarding their knowledge of the drug investigation.

## IV. ORDER

The Court HEREBY ORDERS:

1. Tuschoff's Motion to Dismiss the Indictment (Dkt. 122-1) is DENIED. The Government may present its collective knowledge doctrine argument at the upcoming hearing and solicit testimony on the same.

DATED: February 16, 2021

David C. Nye
Chief U.S. District Court Judge